UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------- x

GOLDSTAR TRUST COMPANY, *as Trustee for the Benefit of the Bondholders of The Apostolic Church of New York, Inc. a/k/a The Apostolic Church Glorious Vision*,

Plaintiff,

-against-

THE APOSTOLIC CHURCH OF NEW YORK, INC. *a/k/a* THE APOSTOLIC CHURCH GLORIOUS VISION,

Defendant.

--------------------------------------------------------- x

REPORT AND RECOMMENDATION

25-CV-5396 (DG)(MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff GoldStar Trust Company initiated this diversity action on September 25, 2025, against Defendant The Apostolic Church of New York, pursuant to Article 13 of New York Real Property Actions and Proceedings Law ("RPAPL"), seeking to foreclose a mortgage encumbering property located at 509 East 78th Street, Brooklyn, New York 11236 (the "Property"). (*See generally* Compl., ECF No. 1.)[1] Before the Court is Plaintiff's motion for default judgment of foreclosure and sale. (*See generally* Notice of Mot., ECF No. 11.) The Honorable Diane Gujarati referred the motion for report and recommendation. For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion should be **granted in part and denied in part**.

[1] All citations to documents filed on ECF are to the ECF document number and pagination unless otherwise noted. Further, all citations to the relevant loan documents are to the exhibits attached to the Declaration of David B. Schnierle unless otherwise noted.

## I. BACKGROUND

The facts are taken from the Complaint and from documents attached to and incorporated by reference into the Complaint. *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–89 (2d Cir. 2015).

This mortgage foreclosure action arises from the issuance of $2 million of first mortgage bonds to secure a mortgage (the "Mortgage") on the Property. Defendant is a New York not-for-profit corporation with its principal place of business in Brooklyn, New York. (Compl., ECF No. 1 ¶ 3; Schnierle Decl. Ex. B, ECF No. 11-4.) Plaintiff is an Arkansas corporation with a principal place of business in Texas and serves as Trustee for the benefit of Defendant's bondholders. (Compl., ECF No. 1 ¶ 2.)

On September 9, 2021, Defendant and Plaintiff's predecessor in interest, non-party Happy State Bank d/b/a GoldStar Trust Company, signed a Trust Indenture, pursuant to which Defendant issued first mortgage bonds in the principal sum of $2,000,000. (Compl., ECF No. 1 ¶ 7; Schnierle Decl. Ex. A, ECF No. 11-3.) As security for the issuance of the bonds, Defendant granted the Mortgage on the Property, which was recorded in the Office of the City Register of the City of New York with City Register File Number 2021000461999 on November 23, 2021. (Compl., ECF No. 1 ¶ 8; Schnierle Decl. Ex. B, ECF No. 11-4; *id.* Ex. C, ECF No. 11-5.) The security interest granted under the Mortgage includes all buildings and improvements to the Property, and all fixtures and articles of personal property used in connection with the Property. (Compl., ECF No. 1 ¶ 9.)

The terms and conditions of the mortgage bonds and Defendant's obligations thereunder are stated in multiple loan documents. In addition to the Trust Indenture, on or around September 28, 2021, Defendant entered into a Building Loan Contract with Happy

State Bank in which Defendant agreed to renovate the Property for church use. (*Id.* ¶ 12; Schnierle Decl. Ex. E, ECF No. 7.) Further, Defendant was required to regularly deposit payments into a Bond Sinking Fund to pay interest coming due and principal maturing on the Bonds. (Compl., ECF No. 1 ¶¶ 15–16.) The payment schedule was stated in a Prospectus and was incorporated by reference into the Trust Indenture. (*Id.* ¶ 15; Schnierle Decl. Ex. D, ECF No. 11-6.)

In approximately November 2024, Defendant defaulted under the terms of the Trust Indenture, the Mortgage, and the Building Loan Contract when it stopped making regular deposits into the Bond Sinking Fund and failed to timely complete scheduled construction work. (*Id.* ¶ 17; *see also* Schnierle Decl. Ex. A, ECF No. 11-3 at 16; *id.* Ex. B, ECF No. 11-4 at 4; *id.* Ex. E, ECF No. 11-7 at 8.) Through counsel, Plaintiff notified Defendant of its default in three letters mailed between April 2025 and September 2025. (*See generally* Schnierle Decl. Exs. F–H, ECF Nos. 11-8 to 11-10.)[2] In the first letter on April 21, 2025, Plaintiff informed Defendant of the default; stated the total amount due of $130,248.63 for unpaid principal, accrued interest, and attorneys' fees; and demanded payment before May 21, 2025 or else the entire unpaid balance would be accelerated and due in full. (Compl., ECF No. 1 ¶¶ 18–20; Schnierle Decl. Ex. F, ECF No. 11-8 at 3.)[3] After Defendant failed to respond, Plaintiff mailed

[2] Each letter is sent by counsel who represents "GoldStar Trust Company, as Trustee for the benefit of the bondholders of The Apostolic Church of New York, Inc. a/k/a The Apostolic Church Glorious Vision, successor-in-interest to Happy State Bank, d/b/a/ GoldStar Trust Company, as Trustee for the benefit of the Bondholders of The Apostolic Church of New York, Inc. a/k/a The Apostolic Church Glorious Vision." Attorney Samuel Karr of Morgan Williamson LLP authored the first two letters and Ryan Becker of Hunton Andrews Kurth LLP wrote the third letter.

[3] The subject line of the April 21, 2025 letter refers to a Trust Indenture dated September 9, 2021 between "Immanuel Baptist Church, Inc." and Happy State Bank, but this appears to be a scrivener's error. (*See* Schnierle Decl. Ex. F, ECF No. 11-8.)

the second letter on May 28, 2025, as a formal notice of acceleration and impending foreclosure if the outstanding debt was not paid, and directed Defendant to contact counsel regarding the exact amount due. (Compl., ECF No. 1 ¶ 21; Schnierle Decl. Ex. G, ECF No. 11-9 at 2–3.) When Defendant still did not respond, Plaintiff mailed a third letter, dated September 9, 2025, demanding payment of the total debt as of September 15, 2025—at least $2,008,295.00, plus fees—and reiterating that foreclosure would be imminent if Defendant did not pay in full by September 24, 2025. (*Id.* ¶ 22; Schnierle Decl. Ex. H, ECF No. 11-10 at 3.) Further, on September 23, 2025, non-party Centennial Bank, as successor-by-merger to Happy State Bank, assigned Plaintiff all right, title, and interest in, to and under or arising out of the Mortgage. (*See* Schnierle Decl. Ex. C, ECF No. 11-5 at 3–7.)

Plaintiff initiated this action on September 25, 2025, and served process on September 29, 2025. (*See generally* ECF Nos. 1, 8.) After Defendant failed to answer or otherwise appear in the action, the Clerk of the Court entered default at Plaintiff's request on October 24, 2025. (ECF Nos. 9–10.) Plaintiff moved for default judgment on October 31, 2025, requesting a judgment of foreclosure and sale and damages including unpaid principal, pre-judgment interest, mortgage costs, and attorneys' fees and costs. (*See* Pl.'s Mem., ECF No. 11-1 at 6–7.) Judge Gujarati referred the motion for report and recommendation. (Nov. 4, 2025 Order Referring Mot.) The Court scheduled a hearing on the motion and directed the parties to appear on March 20, 2026; the Court and Plaintiff mailed a copy of the scheduling order to Defendant at multiple addresses. (*See* ECF Nos. 12–13.) At the hearing, an attorney from the law firm Rothkrug, Rothkrug, and Spector, LLP appeared and stated that Defendant was in the process of retaining the firm but declined to enter a notice of appearance. (*See* Mar. 20, 2026 Min. Entry; Mar. 20, 2026 Tr. ("Tr."), ECF No. 14.) The Court therefore denied counsel's request

for additional time for Defendant to answer or otherwise respond to the Complaint, which request Plaintiff opposed. (*Id.*) Instead, the Court heard oral argument and reserved decision. To date, no other counsel has attempted to appear for Defendant, and none of the Court's notices to Defendant have been returned as undeliverable.

## II. DISCUSSION

### A. Legal Standards

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process to obtain a default judgment. Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y. Mar. 9, 2021). *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default. Fed. R. Civ. P. 55(a). If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment. Fed. R. Civ. P. 55(b)(1). *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021). To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up). The Court must draw all reasonable inferences in favor of the movant. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "'a default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action

against the defendant.'" *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

**B. Jurisdiction & Venue**

**1. Subject Matter Jurisdiction**

Plaintiff appropriately establishes this Court's subject matter jurisdiction over its New York statutory foreclosure claim. *See Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sep. 27, 2021) ("Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action.") (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125–27 (2d Cir. 2011)). Plaintiff asserts this court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (Compl., ECF No. 1 ¶ 5), which grants district courts original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). "The party seeking to invoke a court's jurisdiction bears the burden of 'prov[ing] jurisdiction by a preponderance of evidence.'" *Flagstar Fin. & Leasing, LLC v. Pikes Peak Spine & Joint, LLC*, No. 24-CV-3912 (ERK)(SIL), 2025 WL 486689, at *1 (E.D.N.Y. Feb. 13, 2025) (quoting *Platinum-Montaur Life Scis., LLC v. Navidea Biopharm., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019)).

First, Plaintiff easily establishes the amount in controversy requirement. As alleged, because Defendant has not cured its default, it owes at least $1.8 million in outstanding principal on the Mortgage, exclusive of interest, as of the date the Complaint was filed. (*See* Compl., ECF No. 1 ¶ 26.) Plaintiff therefore meets the statutory criteria for diversity

jurisdiction. *Cf. Windward Bora, LLC v. Ortiz*, No. 21-CV-4154 (MKB)(JMW), 2022 WL 3648622, at *3 (E.D.N.Y. July 5, 2022) (recommending denial of default judgment where plaintiff lender failed to establish that the outstanding balance due exceeded $75,000 without interest), *R. & R. adopted by* 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022)).

Second, the record supports the finding that the parties are completely diverse. Plaintiff sues in its capacity "as Trustee for the Benefit of the Bondholders of The Apostolic Church of New York, Inc." (*See generally* Compl., ECF No. 1.) "A trustee's own citizenship controls for purposes of determining diversity jurisdiction only if the trustee 'possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others,' because that authority is what makes the trustee 'a real party to the controversy.'" *Deutsche Bank Nat'l Tr. Co. as Tr. of Home Equity Mortg. Loan Asset-Backed Tr. Series INABS 2006-D, Home Equity Mortg. Loan Asset-Backed Certificates Series INABS 2006-D under the Pooling & Servicing Agreement Dated Sept 1, 2006 v. Tacoaman*, No. 25-CV-1698 (MKB)(JRC), 2026 WL 498199, at *3 (E.D.N.Y. Feb. 12, 2026) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 (1980) and *Wilmington Sav. Fund Soc'y, FSB as Tr. for Premium Mortg. Acquisition Tr. v. Okunola*, No. 18-CV-2084 (AMD)(PK), 2023 WL 9507759, at *2 (E.D.N.Y. Mar. 15, 2023)), *R. & R. adopted sub nom. by Deutsche Bank Nat'l Tr. Co. v. Tacoaman*, No. 25-CV-1698 (MKB)(JRC), 2026 WL 624360 (E.D.N.Y. Mar. 5, 2026). As such, Plaintiff must allege that "as trustee [it] has legal title to the trust, manages the trust assets and controls the litigation in order for [its] citizenship to control for purposes of diversity." *Windward Bora, LLC v. LaSalle Bank NA as Tr. for Washington Mut. Mortg. Pass-Through Certificates WMalt Series, 2007-7 Tr.*, No. 20-CV-2304 (PKC)(RER), 2021 WL 7908039, at *4 (E.D.N.Y. May 3, 2021), *R. & R. adopted by* Order Adopting R. & R., *Windward Bora, LLC v. LaSalle Bank NA as Tr.*

*for Washington Mut. Mortg. Pass-Through Certificates WMalt Series, 2007-7 Tr.*, No. 20-CV-2304 (PKC)(RER) (E.D.N.Y. June 3, 2021).

While the Complaint does not specifically allege Plaintiff's degree of control over and title to the trust assets, the Trust Indenture and Mortgage attached to the Complaint establish Plaintiff's enforcement powers in this action. Section 909 of the Trust Indenture states that "[a]ll rights of action (including the right to file proof of claims) under this Indenture . . . may be enforced by Trustee," and "any such suit or proceeding instituted by Trustee shall be brought in its name as Trustee without the necessity of joining as plaintiffs or defendants any holders of the Bonds[.]" (Schnierle Decl. Ex. A, ECF No. 11-3 at 18; *see also id.* at 15 § 706 ("[Defendant] agrees that the Trustee, subject to the conditions thereof, may enforce for and on behalf of the holders of the Bonds all of the covenants and agreements of [Defendant] whether or not [Defendant] is in default thereunder.").) Further, the Mortgage gives Plaintiff authority to accelerate the entire principal and interest following a default and assigns the "rents, issues and profits of the premises" to Plaintiff. (*Id.* Ex. B, ECF No. 11-4 at 5.) Accordingly, Plaintiff has demonstrated that its citizenship governs for the purposes of diversity jurisdiction.

Because the parties are corporations, their citizenship is determined by the location of their respective places of incorporation and principal places of business. 28 U.S.C. § 1332(c)(1); *see Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Plaintiff establishes complete diversity because it alleges that it is an Arkansas corporation with a principal place of business in Texas and that Defendant is a not-for-profit corporation registered and with a principal place of business in New York. (*See* Compl., ECF No. 1 ¶¶ 2–3; *see also* Becker

Decl. Ex. B, ECF No. 11-14.) Accordingly, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) over Plaintiff's RPAPL claim.

**2. Standing**

"Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Christian*, No. 19-CV-427 (CBA)(RML), 2020 WL 3918566, at *2 (E.D.N.Y. Feb. 25, 2020), *R. & R. adopted by* 2020 WL 3893015 (E.D.N.Y. July 10, 2020) (quoting *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015), which quotes *Wells Fargo Bank, N.A. v. Rooney*, 19 N.Y.S.3d 543, 544 (2d Dep't 2015)). "[T]he transfer of the promissory note to the plaintiff before the action has commenced is sufficient to demonstrate standing because the mortgage passes incident to the note." *Freedom Mortg. Corp. v. Habeeb*, No. 19-CV-5881 (JMA)(JMW), 2023 WL 5181444, at *4 (E.D.N.Y. July 27, 2023) (quoting *Gustavia Home, LLC v. Rutty*, 785 F. App'x 11, 14 (2d Cir. 2019)), *R. & R. adopted by* 2023 WL 5179668 (E.D.N.Y. Aug. 11, 2023).

The allegations in the Complaint and the uncontested documentary evidence establish Plaintiff's standing as of September 25, 2025, when it commenced this action. Plaintiff alleges that pursuant to the Assignment of Mortgage and Omnibus Assignment, it is the owner and holder of the Mortgage and Trust Indenture (which acts as the note for the Mortgage) and that it possesses and controls the originals of these documents. (Compl., ECF No. 1 ¶ 11.) Plaintiff also submits the Assignment of Mortgage stating that Centennial Bank (the successor-by-merger of Happy State Bank) assigned all rights, title, and interest in the Mortgage to Plaintiff, and the recording and endorsement receipt for the City Register of the City of New York dated

October 27, 2025. (Schnierle Decl. Ex. C, ECF No. 11-5 at 2, 4–5.)[4] Plaintiff assumed the rights as assignee on September 23, 2025 when Centennial Bank signed the Assignment because "[t]he execution date is controlling as an effective date of the assignment when the assignment is in writing." *Fed. Nat'l Mortg. Ass'n v. C.Y. Gold LLC*, No. 24-CV-1314 (OEM)(RML), 2026 WL 1196137, at *3 (E.D.N.Y. Mar. 2, 2026) (citing *Lasalle Bank Nat'l Ass'n v. Ahearn*, 875 N.Y.S.2d 595, 597 (3d Dep't 2009)), *adopted by* Order Adopting R. & R., *Fed. Nat'l Mortg. Ass'n v. C.Y. Gold LLC*, No. 24-CV-1314 (OEM)(RML) (E.D.N.Y. Mar. 18, 2026). Because Plaintiff became the assignee two days before the commencement of this action, Plaintiff has standing to continue this action against Defendant.

**3. Personal Jurisdiction**

Plaintiff establishes the Court's personal jurisdiction over Defendant. *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant."). The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendants must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due

---

[4] Plaintiff also complied with New York's procedural requirements for recording the Assignment on October 27, 2025 by submitting a sworn statement that the assignee is not acting as the mortgagor's nominee and that the Mortgage continues to secure a bona fide obligation. *See* N.Y. Real Prop. Law § 275(3). The Court notes that Plaintiff also submits an Omnibus Assignment that purports to assign certain loan documents identified in an attached Schedule A. (*See* Schnierle Decl. Ex. C, ECF No. 11-5 at 9.) However, no Schedule A is included with the Omnibus Assignment.

process principles. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

Plaintiff establishes each requirement. *First*, Plaintiff properly served Defendant by timely delivering copies of the summons and Complaint to the New York Secretary of State (Aff. of Service, ECF No. 8), which complies with federal and state procedural rules for service on a not-for-profit corporation registered in the state of New York. Fed. R. Civ. P. 4(h)(1)(B); N.Y. Bus. Corp. Law § 306(b)(1), N.Y. Not-for-Profit Corp. Law § 306(b)(1). *Second*, the Court has general jurisdiction over Defendant, "an entity that is headquartered or incorporated in, or maintains its principal place of business, in the forum and is therefore 'at home.'" *Siasia v. Fédération Internationale De Football Ass'n*, No. 21-CV-6516 (AKH), 2021 WL 5042974, at *2 (S.D.N.Y. Oct. 29, 2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137–139 (2014)), *aff'd*, No. 22-72, 2023 WL 405762 (2d Cir. Jan. 26, 2023); *see also 1199 SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council, Inc.*, No 13-CV-2768 (JGK)(JCF), 2013 WL 6003731, at *1 (S.D.N.Y. Nov. 13, 2013) ("As [Defendant] is a non-profit corporation organized and doing business in New York, it is subject to personal jurisdiction in this Court pursuant to New York Civil Practice Law and Rules § 301.") *R. & R. adopted by* 2013 WL 6244716 (S.D.N.Y. Dec. 3, 2013). Plaintiff provides a copy of Defendant's profile in the New York Department of State, Division of Corporations' database, which lists Defendant as a not-for-profit corporation in New York with a service address in Brooklyn, New York. (Becker Decl. Ex. B, ECF No. 11-14.) *Finally*, because Defendant conducts transactions within New York, including execution of the Mortgage, Trust Indenture, and related loan documents for the Property, Defendant therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to

exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

Accordingly, the Court has personal jurisdiction over Defendant.

**4. Venue**

Plaintiff also establishes that venue is appropriate in the Eastern District of New York. A plaintiff may file suit in any judicial district in which, *inter alia*, "a substantial part of the events or omissions giving rise to the claim occurred" or "a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b)(2). Plaintiff plausibly alleges that the Property is in this district and that Defendant's signing of the loan documents and subsequent default took place within this district. (*See* Compl., ECF No. 1 ¶ 6.)

**C. Default Judgment Factors**

"Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment." *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *adopted by* Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar. 31, 2025), *as amended by* Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Apr. 9, 2025). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiff's favor. *First*, Defendant's "non-appearance and failure to respond to the Complaint or otherwise appear indicate willful conduct." *See Tambriz v. Taste & Sabor, LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021). While Defendant attempted to retain counsel for the motion hearing, since then no attorney has appeared or responded to the Complaint on Defendant's behalf, despite the Court's advisory that failure to obtain counsel would likely lead to default judgment against Defendant. (*See* Mar. 20, 2026 Min. Entry.) *Second*, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *R. & R. adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021). *Third*, Plaintiffs will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court." *Vazquez Romero v. La Morenita Fruit Mkt. Corp*, No. 23-CV-6300 (OEM)(MMH), 2026 WL 687228, at *6 (E.D.N.Y. Mar. 11, 2026), *R. & R. adopted by* Order Adopting R. & R., *Vazquez Romero v. La Morenita Fruit Mkt. Corp*, No. 23-CV-6300 (OEM)(MMH) (E.D.N.Y. Mar. 31, 2026) (citation omitted). Based on the foregoing, entry of default judgment is permissible.

### D. Liability

"To foreclose on a mortgage, a plaintiff must demonstrate (1) the existence of a mortgage; (2) ownership of the mortgage; and (3) the defendant's default in payment of the loan." *Ortiz*, 2022 WL 3648622, at *6 (quoting *OneWest Bank, N.A. v. Hawkins*, No. 14-CV-4656 (NGG)(CLP), 2015 WL 5706945, at *5 (E.D.N.Y. Sep. 2, 2015), *R. & R. adopted by* 2015 WL 5706953 (E.D.N.Y. Sep. 28, 2015)). "If these elements are established, plaintiff

gains a presumptive right to collect on the debt that can only be overcome by a meritorious affirmative defense." *CIT Bank, N.A. v. Tineo*, No. 17-CV-5119 (JBW), 2019 WL 6828360, at *3 (E.D.N.Y. Dec. 13, 2019) (citation omitted).

Plaintiff has offered sufficient evidence to establish a *prima facie* entitlement to a default judgment against Defendant. *First*, Plaintiff sufficiently pleads and submits proof of an existing Mortgage dated September 28, 2021, and the Office of the City Register's recording of the Mortgage; the Trust Indenture requiring Defendant to establish and maintain the Bond Sinking Fund; the Prospectus, incorporated by reference into the Trust Indenture and setting forth the payment schedule; and the Building Loan Contract governing the renovations of the Property for church use. (Schnierle Decl. Exs. A–B, ECF Nos. 11-3 to 11-4; *id.* Exs. D–E, ECF Nos. 11-6 to 11-7.) Hence, "[t]hrough Plaintiff's well pleaded complaint and supporting exhibits, Plaintiff has established the obligations of the [Defendant] under those instruments." *Ortiz*, 2022 WL 3648622, at *6.

*Second*, as noted, Plaintiff is the holder of the Mortgage, as established by "'a written assignment of the underlying note[.]'" *Id.* (citing *E. Sav. Bank, FSB*, 631 F. App'x at 15). Plaintiff provides proof that the Mortgage was assigned to Plaintiff through an Assignment of Mortgage and Omnibus Assignment, entered into by Centennial Bank and GoldStar Trust Company. (Pl.'s Mem., ECF No. 11-1 at 6; Schnierle Decl. Exs. A–C, ECF Nos. 11-3 to 11-5.)

*Third*, Plaintiff establishes Defendant's default in payment of the loan. Pursuant to the Trust Indenture, Defendant was obligated to establish the Bond Sinking Fund and then "deposit . . . amounts set forth in a payment schedule . . . used for the payment of interest coming due[.]" (Compl., ECF No. 1 ¶¶ 15–16.) Under the Building Loan Contract, the issued

bonds and Mortgage would become immediately due and payable at Happy State Bank's option if: (1) Defendant failed to make improvement on the Property as stated in plans and specifications previously given to and approved in writing by Happy State Bank; (2) Defendant failed to file amended or supplemental plans or specifications; (3) Defendant did not complete improvements with reasonable dispatch, in Happy State Bank's judgment; and (4) Defendant did not keep, observe, or perform any of the conditions, stipulations, agreements, or covenants contained in the Bonds, Mortgage or other collateral documents. (*Id.* ¶¶ 13–14; Schnierle Decl. Ex. E, ECF No. 11-7 at 6–8.) Defendant stopped making regular deposits into the Bond Sinking Fund in November 2024. (*Id.* ¶ 17.) Furthermore, although § 406 of the Trust Indenture and § 20 of the Building Loan Contract required Defendant to complete timely renovation of the Property for church use, Defendant failed to complete anticipated construction and/or provide updates to Plaintiff regarding such construction. (*Id.* ¶¶ 12–14, 19.) These allegations sufficiently demonstrate that Defendant defaulted on the Mortgage. Because Defendant has not appeared in this action, responded to the Complaint, or responded to the instant motion, Defendant therefore fails to rebut Plaintiff's "presumptive right to collect on the debt." *Tineo*, 2019 WL 6828360, at *3.

Accordingly, the Court respectfully recommends that Plaintiff is entitled to foreclosure of the Property.

**E. Damages**

"[W]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)) (cleaned up). Rather, "the Court has 'a

separate obligation to assess whether damages are appropriate and, if so, to calculate the correct amount of damages.'" *Studio Six Prods., Ltd. v. Sargsyan*, No. 19-CV-2685 (WFK)(MMH), 2024 WL 4309622, at *3 (E.D.N.Y. Sep. 26, 2024) (quoting *Ningbo Yang Voyage Textiles Co. v. Sault Trading*, No. 18-CV-1961 (ARR)(ST), 2019 WL 5399973, at *6 (E.D.N.Y. Sep. 10, 2019), *R. & R. adopted by* 2019 WL 5394568 (E.D.N.Y. Oct. 22, 2019)), *R. & R. adopted by* 2024 WL 4574142 (E.D.N.Y. Oct. 23, 2024). "Once liability is established [on a motion for default judgment], the court must ascertain damages with 'reasonable certainty.'" *Windward Bora LLC v. Sterling*, No. 18-CV-1727 (DRH)(SIL), 2018 WL 5839797, at *4 (E.D.N.Y. Nov. 8, 2018) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)), *R. & R. adopted by* 2018 WL 6706311 (E.D.N.Y. Dec. 19, 2018)). "A plaintiff may submit documentary evidence or detailed affidavits to support its damages claim." *NYQF Inc. v. Sigue Corp.*, 781 F. Supp. 3d 104, 122 (E.D.N.Y. May 6, 2025).

Here, Plaintiff seeks a judgment of foreclosure and sale in the total amount of $2,023,487.32 to satisfy the amount owed from Defendant's default, including $1,853,250.00 in outstanding principal; $189,830.03 in interest; $1,000.00 in Schedule B Fees; $7,764.60 in late fees; $647.50 in bond call fees; $520.00 in annual maintenance fees; $75.00 in recalculation fees; and less the existing Bond Proceeds ($54.47) and Sinking Fund Balances ($29,545.34). (Pl.'s Mem., ECF No. 11-1 at 9; Schnierle Decl., ECF No. 11-2 at 4–7.) To support these requests, Plaintiff submits the declaration of David. B. Schnierle, a Senior Vice President at Plaintiff, and the declaration of Ryan Becker, Plaintiff's counsel. (Schnierle Decl., ECF No. 11-2; Becker Decl., ECF No. 11-12.) In addition to the Trust Indenture, the Mortgage, the Prospectus, and the Building Loan Contract, the declarations include the Trustee

Paying Agent Registrar Agreement ("TPARA"), which purportedly governs Plaintiff's fees for administering the loan payments. (Schnierle Decl. Ex. I, ECF No. 11-11.)

**1. Default Damages**

Plaintiff seeks $1,853,250.00 in outstanding principal based on the accelerated unpaid balance of the Bonds, subtracting $146,750.00 in prior disbursements and principal payments from the original principal indebtedness of $2,000,000.00. (*See* Schnierle Decl., ECF No. 11-2 ¶ 14.a.) Plaintiff also seeks $189,830 in interest to October 31, 2025. (*Id.* ¶ 14.b.) As stated in the Prospectus, Defendant owed monthly payments of $12,941.00 for 24 years and 10 months starting in November 2021 as contributions to the Bond Sinking Fund. (*Id.* Ex. D, ECF No. 11-6 at 21.) The Trust Indenture and the Mortgage permit Plaintiff to accelerate the principal of all Bonds and any accrued interest in an event of default, including after Defendant failed to pay any deposits for the Sinking Fund. (*Id.* Ex. A, ECF No. 11-3 §§ 202, 902; *id.* Ex. B, ECF No. 11-4 ¶ 4.) And the Prospectus lists multiple rates of interest and bond term conditions. (*Id.* Ex. D, ECF No. 11-6 at 2.) Because Defendant has not submitted a deposit since October 8, 2024, Plaintiff is entitled to any unpaid deposits from November 15, 2024, Defendant's due date after its last payment, through the present. Thus, for that 22-month period, Plaintiff should be awarded $284,702.00 (i.e., $12,941.00 x 22 missed payments).

However, Plaintiff does not establish the remaining accelerated balance, the applicable pre-judgment interest, or any of the requested mortgage costs with reasonable certainty. In mortgage foreclosure actions, courts typically award damages where the holder or assignee of the mortgage submits a detailed accounting and/or calculations of the remaining principal balance due, accrued interest, other funds owed by the borrower, total payoff amount, and per diem interest rates. *See Sec'y of U.S. Dep't of Hous. & Urban Dev. v. Richmond Cnty. Pub.*

*Adm'r*, 768 F. Supp. 3d 488, 495 (E.D.N.Y. 2025) (awarding foreclosure action damages where plaintiff submitted detailed affidavits and a statement of account); *Windward Bora LLC v. Thomas*, No. 20-CV-5320 (DG)(MMH), 2022 WL 14731628, at *9 (E.D.N.Y. Sep. 30, 2022) (awarding unpaid principal where Plaintiff submitted affidavits, a loan modification agreement, and an amortization schedule which "shows that the balance due after . . . the most recent date that [Defendant] submitted a payment on the Mortgage"); *Plenitude Cap. LLC v. Utica Ventures, LLC*, 592 F. Supp. 3d 82, 87–88 (E.D.N.Y. 2021) (awarding damages based on the Note and Mortgage, an affidavit of a records custodian, and a billing statement listing all the defendant borrower's payments since the loan origination); *cf. ARCPE Holding, LLC v. 9Q4U5E LLC*, No. 19-CV-6417 (DLI)(RER), 2021 WL 8316275, at *6 (E.D.N.Y. Aug. 11, 2021) ("Where a plaintiff provides no documentation to support an affidavit's assertion of an unpaid principal, it is appropriate to deny the damages request."), *R. & R. adopted by* Order Adopting R. & R., *ARCPE Holding, LLC v. 9Q4U5E LLC*, No. 19-CV-6417 (DLI)(RER) (E.D.N.Y. Sep. 7, 2021); *cf. Nationstar Mortg. LLC v. Atanas*, 285 F. Supp. 3d 618, 627–28 (W.D.N.Y. 2018) (denying judgment of foreclosure and sale because the mortgage note and affidavit alone were insufficient for plaintiff lender to "carry its burden to establish damages with reasonable certainty," and collecting cases). Here, Plaintiff states that the total disbursements and principal payments to date total $146,750.00 but does not provide any documentary evidence to support this figure. Plaintiff also offers the TPARA to justify the "Schedule B fees" and late payment fees without explaining how it calculated any offsets for Defendant's prior payments. (*See* Schnierle Decl., ECF No. 11-2 ¶¶ 14.c.–14.g.)

In sum, "[P]laintiff has failed to explain how it calculated the amounts due and how the documents attached to the affidavit support its request." *Freedom Mortg. Corp. v. Abass*, No.

22-CV-5577 (CBA)(JRC), 2024 WL 1531096, at *5 (E.D.N.Y. Feb. 22, 2024). The Court thus respectfully recommends that Plaintiff should be awarded **$284,702.00**, representing the unpaid deposits to the Sinking Bond Fund from November 2024 to the present, and that Plaintiff's request for any remaining damages should be denied without prejudice to submit supplemental documents within 10 days of an order adopting this Report and Recommendation, if any.

**2. Appointment of Referee**

In the proposed Judgment, Plaintiff further requests that Elaine Shay, Esq. be appointed as Referee to conduct the sale of the Property and be paid $1,100 to conduct the sale and $300 to compute damages. (Proposed Judgmt., ECF No. 11-19 at 2–3.) "Courts routinely appoint referees to effectuate the sale of foreclosed properties." *Deutsche Bank Nat'l Tr. Co. v. Nickle*, No. 24 CV 7889 (NCM)(PCG), 2026 WL 788108, at *8 (E.D.N.Y. Feb. 13, 2026), *R. & R. adopted by* 2026 WL 788011 (E.D.N.Y. Mar. 20, 2026). That said, courts have "previously denied the award of future referee fees . . . when a plaintiff's only basis for the fee was the mention of it in the proposed order." *9Q4U5E LLC*, 2021 WL 8316275, at *5 & n.11 (collecting cases). Moreover, Plaintiff offers no information about Ms. Shay's qualifications to perform the role of referee, and the Court's own research does not yield any other instances where a state or federal court appointed Ms. Shay as referee to conduct a foreclosure sale. Accordingly, the Court respectfully recommends that Plaintiff's request for a referee should be denied without prejudice pending supplemental information about the selected referee, and that any referee fees should be awarded upon detailed documentation after the sale is complete.

### 3. Attorneys' Fees

Plaintiff seeks $46,189.50 in attorneys' fees based on 51.8 hours of work by attorneys and support staff at Hunton Andrews Kurth LLP. (Pl.'s Mem., ECF No. 11-1 at 10; Becker Decl. Ex. F, ECF No. 11-18.)

For mortgage foreclosure cases, a plaintiff "may recover attorneys' fees and costs against a borrower-defendant if the note or mortgage provides for such an award." *Wells Fargo Bank, N.A., as Tr. for Option One Mortg. Loan Tr. 2006-1 v. Drepaul*, No. 25-CV-2185 (DG)(RML), 2026 WL 1080004, at *4 (E.D.N.Y. Feb. 17, 2026) (citation omitted), *R. & R. adopted by* Order Adopting R. & R., *Wells Fargo Bank, N.A., as Tr. for Option One Mortg. Loan Tr. 2006-1 v. Drepaul*, No. 25-CV-2185 (DG)(RML) (E.D.N.Y. Mar. 11, 2026). Here, several loan documents provide that Plaintiff may be awarded attorneys' fees for this foreclosure action. First, the Mortgage states that "if any action or proceeding be commenced . . . all sums paid by the Mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this Mortgage (including reasonable counsel fees), shall be paid by the Mortgagor[.]" (Schnierle Decl. Ex. B, ECF No. 11-4 at 5.) The TPARA states that Plaintiff "shall specifically have the right of additional reasonable compensation for services rendered, and the right of reimbursement for any fees paid by [Plaintiff] to attorneys, accountants, appraisers, or any other person whose services are necessary[.]" (*Id.* Ex. I, ECF No. 11-11 at 5.) The Trust Indenture provides that action taken under the provisions of this Article in respect of an event of default" will include "payment of the costs and expenses of the proceedings resulting in the collection of such moneys, including counsel fees[.]" (*Id.* Ex. A, ECF No. 11-3 at 17.) As discussed below, however, a reduced attorneys' fee is warranted in this case.

**a. Hourly Rate**

In calculating attorneys' fees, "a district court should consider the rate [a] reasonable, paying client would pay, and use that rate to calculate the presumptively reasonable fee." *Barbara S. Parrett Fam. P'ship, Ltd. v. Quantum Realty Dev., Inc.*, No. 23-CV-4077 (FB)(ST), 2024 WL 1530936, at *7 (E.D.N.Y. Feb. 29, 2024), *R. & R. adopted by* 2024 WL 1364322 (E.D.N.Y. Apr. 1, 2024) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 193 (2d Cir. 2008).) "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill*, 522 F.3d at 183).

"The method for determining reasonable attorneys' fees in this Circuit is based on several factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation, and ability of the attorney, and awards in similar cases." *Treyger v. First Class Furniture & Rugs Inc.*, No. 21-CV-2902 (EK)(RLM), 2022 WL 543026, at *7 (E.D.N.Y. Jan. 10, 2022) (citing *Arbor Hill*, 522 F.3d at 186 n.3, 190), *adopted by* 2022 WL 541795 (E.D.N.Y. Feb. 23, 2022). "In what has become known as the 'forum rule,' courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits." *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266 (MKB), 2025 WL 405986, at *6 (E.D.N.Y. Feb. 5, 2025) (citing *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023)). "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL

1018791, at *14 (E.D.N.Y. Mar. 16, 2022), *R. & R. adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

Plaintiff requests an hourly rate of $1,194.25 for attorneys Ryan A. Becker and J. Mignone (Partners), $637.50 for attorney Evan Weisberg (Associate), $467.50 for C. Mulder (Staff Timekeeper), $391.00 for E. Galbraith (Paralegal), and $348.50 for A. Totaram (Librarian). (Becker Decl., ECF No. 11-12 ¶ 15; *id.* Ex. F, ECF No. 11-18 at 6.) Becker has over twenty years of experience as a practicing attorney and "represent[s] national banks, mortgage servicers, and other financial services companies in complex finance and business litigation across the country." (*Id.* ECF No. 11-12 ¶ 15.) Mignone has practiced at Hunton for over fifteen years in the real estate group and assisted Plaintiff in assessing the chain of title and ensuring that all documentation was ready to proceed with foreclosure. (Tr. 9:8–15.) Weisberg has been practicing law since 2023, is a member of the firm's Complex Commercial Litigation team and has experience in both New York state and federal courts. (Becker Decl., ECF No. 11-12 ¶ 15.) Mulder and Galbraith are paralegals with over twenty years of experience. (*Id.*) Totaram is a reference librarian and Plaintiff "used her on a limited basis as well to understand the chain of title here and also to look for any other secured interests or any other interests in the property so that [Plaintiff] could name them, if necessary, as defendants in the complaint." (Tr. 11:4–7.)

The Court finds that the requested hourly rates are unreasonable. "In this district, hourly rates of $450 to $650 for partners, $300 to $450 for senior associates, $150 to $300 for junior associates, and $100 to $150 for paralegals are reasonable." *Nickle*, 2026 WL 788108, at *11 (finding that a $330 hourly rate for an attorney practicing since 2002 in a firm that "has 'many decades worth of experience, and has an excellent reputation representing major

financial institutions'" is appropriate.) Additionally, "the case does not otherwise present sufficient complexities to warrant the high fees charged here." *See Palmco Admin., LLC v. Flower Payment, Inc.*, No. 23-CV-7409 (VM), 2025 WL 727413, at *5 (S.D.N.Y. Mar. 6, 2025) (reducing Hunton's requested attorneys' fees). Also, because a reasonable client would not pay the requested fees for counsel's failure to properly explain its damages calculations, a reduction in hourly rates is appropriate.

Accordingly, the Court respectfully recommends Hunton's hourly rates should be reduced to $650 for partners Becker and Migone, $450 for associate Weisberg, $200 for Mulder and Galbraith, and $150 for Totaram.

**b. Reasonable Hours Expended**

"For purposes of determining a reasonable fee, the number of hours billed must also be reasonable[.]" *Abreu v. Congregation Yetev Lev D'Satmar Meats & Poultry, Inc.*, No. 17-CV-272 (KAM)(LB), 2019 WL 2526087, at *5 (E.D.N.Y. June 19, 2019). "The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary." *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 211 (E.D.N.Y. 2019). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours." *Id.* (cleaned up).

Here, Plaintiff reports 51.8 hours spent on litigating this case. (Pl.'s Mem., ECF No. 11-1 at 10.) According to the billing records, this total reflects 25.5 hours for Becker, 1.0 hours for Mignone, 17.7 hours for Weisberg, 3.3 hours for Mulder, 3.3 hours for Galbraith, and 1.0

hours for Totaram. (Becker Decl. Ex. F, ECF No. 11-18 at 6, 12.) The work performed by the attorneys consists of work done in connection with initiating this case and filing the motion for default judgment. However, "the Court is troubled by the ratio of associate to partner/counsel hours, which should typically reflect more associate hours than partner/counsel hours." *Palmco Admin., LLC*, 2025 WL 727413, at *5 (reducing Hunton's requested attorney hours). Accordingly, the Court respectfully recommends the requested hours should be reduced by 15% percent for every biller except for Becker, whose hours should be reduced by 20%. Hence, the total hours should be 42.77, including 20.4 for Becker, 0.85 for Mignone, 15.05 for Weisberg, 2.81 for Mulder, 2.81 for Galbraith, and 0.85 for Totaram. *See Palmco Admin., LLC*, 2025 WL 727413, at *5.

*Table 1: Attorneys' Fees*

| **Attorney / Staff** | **Hours** | **Rate** | **Total** |
|---|---|---|---|
| Becker | 20.4 | $650.00 | $13,260.00 |
| Mignone | 0.85 | $650.00 | $552.50 |
| Weisberg | 15.05 | $450.00 | $6,772.50 |
| Mulder | 2.81 | $200.00 | $562.00 |
| Galbraith | 2.81 | $200.00 | $562.00 |
| Totaram | 0.85 | $150.00 | $127.50 |
| | | **Grand Total** | **$21,836.50** |

Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$21,836.50** for attorneys' fees.

**4. Litigation Costs**

Finally, Plaintiff seeks $1,012 in litigation costs, including fees for court filing, service of process, postage, and legal research. (Pl.'s Mem., ECF No. 11-1 at 10; Becker Decl. Ex. F, ECF No. 11-18 at 7, 12.) Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Freedom Mortg. Corp. v. Weisblum*, 19-CV-2033 (DRH)(AKT), 2020 WL 5881235, at *10 (E.D.N.Y. Aug. 19, 2020) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F. 2d 278, 283 (2d Cir. 1987)), *R. & R. adopted in relevant part by* 2020 WL 5878262 (E.D.N.Y. Oct. 2, 2020). "However, it is incumbent upon the party seeking reimbursement of its costs to provide the Court adequate substantiation in the form of receipts and other documents not only showing such costs were incurred, but that they were paid." *United States v. Estate of Sobrane*, No. 11-CV-4995, 2017 WL 629403, at *9 (E.D.N.Y. Jan. 31, 2017), *R. & R. adopted by* 2017 WL 627412 (E.D.N.Y. Feb. 15, 2017).

Plaintiff's submissions demonstrate that it is entitled to some, but not all, the requested costs. *First*, the Court permissibly takes judicial notice of the docket notations for paid filing fees. *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023). Plaintiff is entitled to the $405.00 filing fee for this case because the docket reflects that it paid the fee. (ECF No. 1 Dkt. Entry.) *Second*, Plaintiff is entitled to the $40.00 cost for service of process to the Secretary of State. (*See* Becker Decl. Ex. D, ECF No. 11-16 at 4.) However, Plaintiff is not entitled to any other litigation cost because it fails to provide documentary evidence to substantiate its requests. *See, e.g., Vazquez Romero*, 2026 WL 687228, at *16 (denying award for costs where Plaintiff failed to provide invoices for the requested costs); *9Q4U5E LLC*,

2021 WL 8316275, at *6 ("To properly substantiate its damages, [plaintiff] must provide further documentation.").

Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$445.00** in litigation costs.

## III. CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion for default judgment should be **granted in part and denied in part**. Specifically: (1) a judgment of foreclosure and sale should be entered against Defendant; (2) Plaintiff should be awarded **$306,983.50** in damages, including (a) $284,702.00 in unpaid deposits to the Bond Sinking Fund from November 2024 to the present, (b) $21,836.50 in attorneys' fees, and (c) $445.00 in litigation costs; and (3) Plaintiff's other requests for damages should be denied without prejudice to submit supplemental documentation within 10 days of an order adopting this Report and Recommendation, if any.

A copy of this Report and Recommendation is being served on Plaintiff via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Defendant at the following addresses: The Apostolic Church of New York, Inc. a/k/a The Apostolic Church Glorious Vision, 701 S. Taylor, Suite 260, Amarillo, Texas 79101; The Apostolic Church of New York, Inc. a/k/a The Apostolic Church Glorious Vision, 1565-1571 Ralph Avenue, Brooklyn, New York 11236; The Apostolic Church of New York, Inc. c/o Michael J. Rabus, Esq., Ahmuty, Demers & McManus, Esqs., 199 Water Street, 16th Floor, New York, New York 10038; The Apostolic Church of New York, Inc. a/k/a The Apostolic Church Glorious Vision, P.O. Box 470465, Brooklyn, New York 11247; The Apostolic Church of New York, Inc. a/k/a The Apostolic Church Glorious Vision, 1571 Ralph Avenue,

Brooklyn, New York 11236; The Apostolic Church of New York, Inc., Attn: Deacon Matthew Ave, 553 East 108th Street #1-D, Brooklyn, New York 11236, and email to tacgv509@gmail.com.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Gujarati. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025).

**SO ORDERED.**

Brooklyn, New York
September 1, 2026

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge